Sarfert Hosiery Mills, Inc. v. Commissioner.
Sarfert Hosiery Mills v. Commissioner
Docket No. 9512.
United States Tax Court
1947 Tax Ct. Memo LEXIS 37; 6 T.C.M. (CCH) 1208; T.C.M. (RIA) 47306; November 13, 1947
*37 Herman H. Krekstein, Esq., 1528 Walnut St., Philadelphia 2, Pa., and Meyer Boskey, Esq., 11 West 42nd St., New York 18, N. Y., for the petitioner. Karl W. Windhorst, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This case involves deficiencies in income and excess profits taxes for the taxable year 1940 in the respective amounts of $3,660.41 and $1,620.60. The question involved is the reasonableness of the compensation for personal services rendered by three officers of petitioner corporation during said year. Respondent made the following adjustments of said salary and based his notice of deficiency thereon: Amount Claimed
Amount Allowed
Amount Disallowed
Name of Individual
as Deduction
by Respondent
by Respondent
Norman Cohn
$22,854.97
$17,092.01
$5,762.96
Herbert N. Cohn
15,654.98
11,891.98
3,763.00
Wm. Sirota
20,554.97
15,791.93
4,763.04
Findings of Fact Petitioner is incorporated under the laws of Pennsylvania with its principal place of business in Philadelphia. It filed its income and excess profits tax returns for 1940 with the collector for the first district of Pennsylvania. *38 It kept its books of account and made its income and excess profits tax return on the accrual basis. Petitioner manufactures seamless hosiery for men, women and children. Norman Cohn had been its president and Herbert N. Cohn its secretary-treasurer since 1934. William Sirota entered petitioner's employment in April 1938 and since 1939 has been its vice-president. These three officers constituted its board of directors. Beginning with the employment of Sirota and continuing through the taxable year petitioner corporation assigned to each officer a territory in which said officer was responsible for sales, and a common account was opened on the books of the company in which was kept commissions in the amount of 5 per cent on the net value of all sales originating in the sales territory of petitioner except those sales actually made by other salemen operating on a commission. Out of this common account each of the three officers was paid one-third of the total commissions earned. This arrangement was to avoid competition among the officers to earn commissions which competition was believed to be detrimental to their other work for petitioner corporation. In addition to these commissions *39 each of the officers received a stipulated salary. On December 2, 1940, petitioner's directors, by resolution, voted to pay the three officers above mentioned, in addition to their existing salaries and commissions which have prevailed during the year 1939, bonuses as follows: Norman Cohn
$3,000.00
William Sirota
2,000.00
Herbert Cohn
1,000.00
The compensation paid the three officers during 1939 and 1940 is as follows: Norman Cohn
1939
1940
Bonus $ $ 3,000.00
Salary
10,400.00
10,400.00
Commissions
6,691.96
9,454.97
Total
$17,091.96
$22,854.97
Herbert N. Cohn
Bonus $ $ 1,000.00
Salary
5,200.00
5,200.00
Commissions
6,691.98
9,454.98
Total
$11,891.98
$15,654.98
William Sirota
Bonus $ $ 2,000.00
Salary
9,100.00
9,100.00
Commissions
6,691.98
9,454.97
Total
$15,791.98
$20,554.97
Norman Cohn has been associated with the hosiery business since 1909. He has extensive experience in styling, designing of hosiery, purchasing of supplies and supervising sales. He is also familiar with the machinery used in the manufacture of hosiery. His highest earning capacity prior to working with petitioner was $20,000 *40 a year plus an indeterminate bonus. William Sirota began in the hosiery business in 1918. He has had extensive experience as a salesman and as a general manager, as well as in the purchasing of materials. He was at one time assistant to the president of Interwoven Hosiery Company in charge of production, advertising and sales. Herbert N. Cohn is the son of Norman Cohn. He was 26 years of age in 1940, and had attended Wharton School at the University of Pennsylvania for two years. In 1933 he entered the hosiery business with his father where he gained experience in selling. In 1934 he was employed by petitioner and gained experience in the different phases of manufacturing and finishing hosiery. Prior to the employment of Sirota petitioner manufactured children's hosiery and ladies' anklets. After Sirota came, men's hosiery was added to the line, requiring the purchase of additional machinery and the business through 1938, 1939 and 1940 greatly increased. During 1940 Norman Cohn was in charge of production, finances and the purchase of raw materials. All of the three officers did the styling and designing. William Sirota made arrangements, through his previous contacts in the *41 industry, for the manufacture of hosiery in the greige for Sarfert by other mills. Herbert N. Cohn assisted both, supervised the production schedules and also looked after the finishing. In addition, the three supervised the selling, each spending time at the New York sales office working with and instructing and overseeing other salesmen. The three officers, in addition to their management and executive work, sold the bulk of the petitioner's output of hosiery. Of net sales of $652,293.60 during 1940, the officers themselves were responsible for $560,764.80. The petitioner sold its hosiery to the department stores and specialty shops. It had 750 of such customers located throughout the United States. Almost all of these customers were contacted during 1940. Norman Cohn was on selling trips about three months, Sirota about six months and Herbert N. Cohn about six or seven months during the year. The officers devoted their full time to the business of the petitioner. When they were not away on selling trips, they were at the Company's New York sales office or at the factory. During 1940 the petitioner employed several salesmen other than the officers. These other salesmen *42 were paid a commission of 5 per cent. Due entirely to the services and ability of its officers, the petitioner was successful and its products attained a high regard and reputation in the industry. Under the direction and management of its officers the sales of the petitioner advanced rapidly as follows: Year
Sales
1935
$ 84,216.34
1936
171,951.99
1937
185,395.96
1938
270,844.64
1939
504,528.12
1940
696,683.24
The profits and the ratio of profits of the petitioner to capital and surplus for each of the years 1935 to 1940, inclusive, after deducting as an expense the compensation paid to officers, were as follows: Ratio of Profits
to Total Capital
Year
Profits
and Surplus
1935
$ 3,921.88
140.7%
1936
7,983.89
31.19%
1937
4,466.09
10.68%
1938
11,563.34
22.87%
1939
35,210.44
49.30%
1940
34,831.63
33.11%
Commissions generally paid to salesmen in the hosiery business ranged from 5 per cent to 8 per cent. Stockholdings with respect to the stock of petitioner during the year 1940 were as follows: Norman Cohn
60 shares
Mildred Cohn (wife
of Norman Cohn)
20 shares
Herbert N. Cohn
20 shares
Wm. Sirota
10 shares, but with the
right to receive divi-
dends on 40 shares.
*43 Mildred Cohn was neither an officer nor director of petitioner. No dividends eo nomine were paid by the petitioner during 1940 or years prior thereto. The salary and commissions paid in 1940 constituted reasonable and necessary business expense. The bonuses paid to the executive officers in that year did not constitute reasonable and necessary business expense. All facts in addition to the above which have been stipulated by the parties are adopted by the Court as stipulated. Opinion The decisions consistently affirm that the question of the reasonableness of compensation paid to corporate officers is one of fact for the Court. Each case stands upon its individual bottom and it is difficult for the Court to derive much benefit from the consideration of the individual facts in other cases which, in almost every case, are distinguishable from the case pending before the Court. It is also well accepted that the petitioner has the burden of proving that it is entitled to a deduction of a larger amount than the respondent has allowed in the notice of deficiency. See Crescent Bed Co., Inc., v. Commissioner, 133 Fed. (2d) 424. In the case at bar the record is well *44 supplied with very persuasive evidence that the officers of this corporation were able, energetic men who devoted their energies to the taxpayer's business and who had had very satisfactory success in the operation of that business. Two of these officers were men of outstanding background and experience. The taxpayer paid these men in 1940 the same salary and the same rate of commission on sales as had been paid in 1939. On these two elements of compensation the only difference was that in 1940 the net dollar value of the sales was considerably above that of 1939 and therefore the commissions were larger. The testimony is that commissions of from five to eight per cent were generally recognized in the hosiery business. We can therefore see no basis for considering a commission of five per cent paid in 1940 an unreasonable commission, even though the dollar value of the sales increased in 1940 over 1939 and even though the record is not clear as to how much of that increase was due to an increase in volume of merchandise sold and how much was due to an increase in price. It is our conclusion therefore that the taxpayer in this case has established by a preponderance of the evidence *45 in this case the reasonableness of the salaries and commissions paid its executive officers in 1940. When, however, we come to consider the bonuses paid during that year we are confronted with a different problem. There are a few factors connected with the payment of these bonuses that raise serious questions concerning their reasonableness. In the first place, these bonuses were not authorized by the board of directors until the last month of the taxable year, although in the resolution the directors stated that they had been informally granted at the beginning of the taxable year, with nothing being placed in the corporate records on this subject. The minutes of the meeting at which they were granted stated that the resolution was passed because "the accountant has requested that the board of directors adopt a resolution." This fact in itself would probably not be worthy of consideration if the whole proceeding paying these bonuses was not very much in the nature of a duplication of the method adopted in 1939 for the payment of commissions. In other words, these directors, by having informal conversations at the beginning of the taxable year and withholding formal action until *46 the end of the taxable year, kept themselves in a position to divert any amount of revenue desired from dividends to salary by not passing the appropriate resolution at the beginning of the taxable period. It is to be noted also that while a substantial portion of the income of this corporation was transferred to the capital and surplus account none of it has ever been paid out as dividends, at least within several years prior to the taxable year involved. We listened to the evidence and have examined this record carefully in an effort to find some substantial facts existing in 1940 to justify the payment of these bonuses. We have been unable to do so. The nature of the business in 1940 was substantially the same as that in 1939 except that possibly some new machinery was added to the plant equipment. The increase in the volume of sales and the extent that it was reflected in the dollar value thereof was adequately compensated for to the executive officers by the increase in commissions. It is worthy of note that an appreciable proportion of the sales for which these officers were paid commissions resulted from purchase orders voluntarily sent to the main office and were not the *47 result of direct effort on the part of the officers. An additional reason for questioning these bonuses is the fact that the record discloses that there is probably a rather proportional relationship between the size of the bonus and the number of shares in the corporation held by the executive officers. The record is very much confused as to the number of shares held by these officers and the taxpayer has not introduced sufficient evidence to clarify this situation. After February 25, 1939, the shareholdings were as follows: Norman Cohn, Mildred Cohn (his wife), and Herbert Cohn together held sixty shares, while Sirota was under contract to buy forty shares. By subsequent agreement of December 26, 1939, the Cohn block was changed to one hundred shares of a new issue and Sirota entered into a contract to purchase fifty shares of which ten were delivered and it was provided that until final settlement Sirota was to procure dividends on forty shares. Therefore, if we eliminate the shares of stock held by Mildred Cohn, we see that the bonus payments are in very close proportion to the dividend rights of the three officers involved herein, those rights being in the ratio of sixty, forty *48 and twenty, while the bonuses are in the ratio of $3,000, $2,000 and $1,000. We do not consider this relationship of great weight in itself, but we consider it of sufficient importance to be worthy of consideration. It is therefore our conclusion that the taxpayer in this case has not established by a preponderance of all the evidence a justification for the payment of the bonuses in 1940. Decision will be entered under Rule 50.